DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. MJ23-5000-1 |
| Plaintiff, | ) ) | MR. GREENWOOD'S MOTION TO |
| v. | ) ) | REVOKE THE DETENTION ORDER AND SET CONDITIONS OF RELEASE |
| MATTHEW GREENWOOD, | ) ) | **NOTING DATE: January 27, 2023** |
| Defendant. | ) ) | ***Oral Argument Requested*** |
| | ) | |

## I.   INTRODUCTION

Mr. Greenwood, through counsel, respectfully moves this Court to revoke the Detention Order entered in this case and to set conditions of release. Quite simply, Mr. Greenwood does not present an unmanageable risk of flight or danger to the community. To the contrary, the risk factors that Mr. Greenwood presented prior to his arrest—Substance Use Disorder and poverty—are easily managed with appropriate conditions, and are specifically addressed by Mr. Greenwood's release plan. Furthermore, while the government has also argued that the seriousness of the present charge weighs in favor of detention, the government also acknowledges that the charge is not as serious as some media reports claim.

Mr. Greenwood has constitutional and statutory rights to be released on the least restrictive conditions necessary. These rights protect Mr. Greenwood's fundamental liberty, and ability to participate in his own defense. Because conditions of release can reasonably assure Mr. Greenwood's appearance at future hearings and the safety of the

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

community, the Court should revoke the Detention Order and order Mr. Greenwood released on conditions.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Mr. Greenwood's whole life and most important ties are in this district.

Mr. Greenwood has lived in this district for his entire life. His long-term partner and closest family live in this district. His education was in this district. His work history has been in this district. Mr. Greenwood has never traveled out of the country and does not have a passport.

Mr. Greenwood has neither the resources nor the desire to leave this district. Indeed, he would have nowhere to go and no means of support. More importantly, Mr. Greenwood has the strongest motivation possible to stay in this district and follow the Court's rules: he is expecting his first child, due to be born later next month. Mr. Greenwood's pregnant partner and her care providers are here in this district. His greatest concern is their well-being.

### B.   Prior to his arrest, Mr. Greenwood was dealing with adverse childhood experiences, financial hardship, and substance use disorder, but without the treatment or resources he needed.

Mr. Greenwood has endured significant hardship and neglect in his life. His mother left his family when he was a child, and has not contacted him since. His father was repeatedly imprisoned, and therefore frequently was unable to care for or support Mr. Greenwood and his siblings. Though Mr. Greenwood's sister was not much older than him, she had to take on some of the responsibility of raising him. Mr. Greenwood also endured other significant negative experiences in his youth. Research has proven that these and other adverse childhood experiences can negatively impact decision-making and other life skills. *See* Centers for Disease Control & Prevention, Fast Facts: Preventing Adverse Childhood Experiences (April 6, 2022),

MOTION TO REVOKE DETENTION ORDER
(*United States v. Greenwood*, MJ23-5000-1) - 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

https://www.cdc.gov/violenceprevention/aces/fastfact.html ("A[dverse] C[hildhood] E[xperience]s can have lasting, negative effects on health, well-being, as well as life opportunities such as education and job potential. . . . Toxic stress from A[dverse] C[hildhood] E[xperience]s can negatively affect children's brain development, immune systems, and stress-response systems. These changes can affect children's attention, decision-making, and learning.").

Unfortunately, Mr. Greenwood has never received treatment or needed support for his adverse childhood experiences. Like many people struggling to process trauma and stress, Mr. Greenwood developed a Substance Use Disorder (SUD). For several years, Mr. Greenwood maintained stable housing, and good jobs in carpentry and roofing. But when his substance use worsened—namely with methamphetamine—he struggled to maintain the independent life he built. Prior to his arrest in this case, Mr. Greenwood was in the midst of a serious relapse. He was also in a state of immense grief and stress, intensified by the recent sudden death of his older brother.

### C.     Mr. Greenwood does not have an aggravated criminal history, and has demonstrated his efforts to follow through with court requirements even when he lacked support.

Though Mr. Greenwood has prior criminal convictions, his record reflects his poverty and addiction more than any character for criminality. Indeed, the majority of Mr. Greenwood's prior charges relate to driving with a suspended license. The license suspension and criminalization of driving with a suspended license statutes in Washington so egregiously trap poor people in impossible situations that the Thurston County Superior Court has held that they are unconstitutional. *See Pierce, et. al. v. Wash. Dep't of Licensing*, 20-2-02149-34,[1] Order Granting Plaintiff's Motion for Summary Judgment (Wash. Thurston Co. Sup. Ct. Apr. 30, 2021). Even an initially

---

[1] Cited case documents are available at https://www.aclu-wa.org/cases/pierce-et-al-v-dol.

small traffic fine can quickly balloon with interest and collection fees if not paid promptly—putting those unable to pay in an impossible situation. *See id*., Complaint (Oct. 7, 2020). Mr. Greenwood's record reveals that he too, was trapped in this cycle of inability to pay ever-increasing driving-related fines.

Mr. Greenwood's other convictions—theft/property charges and misdemeanors—reflect his impaired thinking while in the grips of his SUD and his struggles to survive economically. There are no prior gun-related charges, no serious violent charges, and no allegations that would otherwise raise a risk of danger. Indeed, Mr. Greenwood's state guidelines have never surpassed a year for a prior conviction, and he has never been sentenced to more than a couple months of custody—generally served on Electronic Home Monitoring (EHM).

Further, while Mr. Greenwood has been subject to court rules before, he has not been under sustained ***active*** court supervision. He has certainly had some difficulties in completing some court requirements. Some of those requirements, for example a defensive driving course or an EHM term administered by a private company, cost money. Others did not. Yet once he actually began his EHM terms, Mr. Greenwood successfully completed them. Mr. Greenwood demonstrated his follow-through with court obligations even on cases where he had little structure or support. For example, *after* entering a plea in a driving-related misdemeanor, Mr. Greenwood twice appeared in court alone even though his defense attorney failed to appear. *See* Case No. 5Z1174101 (Pierce Co. Dist. Ct.) (Hearings Sep. 30 and Oct. 7, 2016).[2] More recently, while released without active supervision on a case in Kitsap County, Mr. Greenwood regularly contacted the Court to confirm his next court date and stayed in good contact with his appointed attorney. *See* Case No. 22-1-00355-18 (Kitsap Co. Sup. Ct.). Mr.

---

[2] After the attorney's second failure to come to court to represent Mr. Greenwood, the Court appointed the Department of Assigned Counsel, the public defender for Pierce County to represent him instead.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Greenwood's positive efforts even without active supervision demonstrate his desire to follow court orders.

**D.**     **The government's arrest of Mr. Greenwood had a great impact on him and his loved ones, and he has demonstrated no inkling of resistance to the legal process in this case.**

On December 31, 2022, government agents executed a search and arrest warrant for Mr. Greenwood. Several armed law enforcement agents descended upon the trailer they believed Mr. Greenwood shared with  his pregnant partner, throwing flash bang grenades, and breaking through the door. *See* Hal Bernton & Mike Carter, *Two Charged in Pierce County Christmas Day Substation Attacks*, Seattle Times, Jan. 3, 2023, https://www.seattletimes.com/seattle-news/law-justice/two-charged-in-pierce-county-christmas-day-substation-attacks/. This was a terrifying experience for Mr. Greenwood and his partner.

Nonetheless, the government has affirmed that Mr. Greenwood was entirely cooperative with arresting agents. He did not resist, try to flee, nor in any way try to obstruct the investigation. To the contrary, despite his traumatized state, Mr. Greenwood did everything he could to cooperate and comply with the agents' requests. Mr. Greenwood's conduct during and after his arrest in this case confirm his commitment to respecting this legal process.

The government filed a Complaint charging Mr. Greenwood alongside Jeremy Crahan with Conspiracy to Damage Energy Facilities under 18 U.S.C. § 1366. The government also charged Mr. Greenwood with possession of unregistered firearms under 26 U.S.C. § 5861(d). *See* Dkt. No. 2. Both Mr. Greenwood and Mr. Crahan made their initial appearances on January 3, 2023. *See* Dkt. No. 10.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

**E.      The government moved for Mr. Greenwood's detention, arguing primarily a risk of danger based on the instant charge, his SUD, and his prior record.**

The government moved to detain Mr. Greenwood. *See* Dkt. No. 4. The government sought detention under 18 U.S.C. § 3142(f)(1) on the basis that the charges included a charge defined as a "federal crime of terrorism" under 18 U.S.C. § 2332b(g)(5)(B) and included a charge that involved possession of a firearm. *See id*. at 2–3. Notably, the "federal crime of terrorism" definition in § 2232b is a definition used to give federal law enforcement authority to investigate crimes that might otherwise be under the exclusive or primary jurisdiction of the state. *See* 18 U.S.C. § 2232b(f). The definition requires no terrorism-related motive and specifies, among numerous other statutes, 18 U.S.C. § 1366(a). *See* 18 U.S.C. § 2332b(g)(5)(B)(i). The government moved for detention generally to ensure Mr. Greenwood's appearance at future hearings and the safety of the community. *See* Dkt. No. 4 at 3.

The Court held a detention hearing on January 6, 2022. The government argued for detention citing the seriousness of the present charge, and its belief that Mr. Greenwood was "at high risk of reoffending[,]" primarily because of his SUD. Ex. A at 8. The government also alleged that, prior to arresting them, law enforcement observed Mr. Greenwood and co-defendant Mr. Crahan in an area near an electrical substation. *See id*. at 8–9.  And the government argued that the weight of the evidence, at least as to the § 1366 charge, was strong. *See* Ex. A at 12–13.

The government's arguments then focused on Mr. Greenwood's history and characteristics. The government tied Mr. Greenwood's SUD to his criminal history record. *See id*. at 13. The government argued, however, that this amounted to a serious character flaw:

> It's not the most serious criminal history, so I don't want to overstate it. But what is significant to me is how consistent it is. And repeatedly

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> through the years, this is someone who has violated the law, not obeyed
> Court orders, and just continues to seem to do whatever he wants to do.

Ex. A at 13. The government cited the mostly dated failures to appear on Mr.
Greenwood's record and the present arrest to argue that he has not complied with other
court supervision. *Id*. at 12–13. And the government argued that Mr. Greenwood was
motivated by desperate financial hardship here, and that problem would not be solved
by release. Ex. A at 14–15.

      The government agreed that the inpatient SUD treatment program advocated by
Mr. Greenwood and recommended by Pretrial Services (discussed below) was an
appropriate release plan, but complained that it was too short:

> According to Mr. Greenwood, when he spoke to the FBI, he was
> motivated to commit these crimes because he's going through some hard
> times. And the things he talked about were his father being in prison, his
> girlfriend being pregnant and very close to giving birth, their lack of a
> stable residence, his unemployment, and basically his desperate need for
> money. On top of that, he's got the meth problem.
>
> The defense is proposing a relatively short-term inpatient treatment
> facility. That may be great for 30 days. It will be -- keep him out of the
> community, address the substance abuse. But that's a short time. This is
> 30 to 45 days. And 30 to 45 days, all these same things are going to be in
> place.
>
> He's going to have to deal with his meth issue in the community. His
> girlfriend's child will presumably be born. They will need even more
> money. The residence is still going to be something he has to address.
> He's still going to be unemployed and will need to find a job. There's --
> none of those circumstances that he says drove him to commit these
> crimes are going to be different in 30 to 45 days.

Ex. A at 15–16. The government asked the Court to detain Mr. Greenwood.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

### F.   Mr. Greenwood proposed a release plan with conditions to specifically manage the risks argued by the government.

Mr. Greenwood asked the Court to release him to an inpatient SUD treatment program, to transition upon completion of the program to sober housing. Mr. Greenwood completed an assessment with a licensed provider and was accepted to a recommended inpatient program. Mr. Greenwood further agreed to the Pretrial Services Department's recommendation of electronic monitoring. *See* Ex. A at 15–18.

Mr. Greenwood argued that the conditions proposed effectively managed the risk argued by the government.

> I would also note that, you know, the primary concern the Government has raised here is as to danger to the community, specifically citing essentially what they believe to be Mr. Greenwood's, you know, poor behavior, poor judgment at a time when he was using methamphetamine. And this condition that I'm proposing and this release plan is specifically designed to address that concern.
>
> [Mr. Greenwood has] lived his whole life in this community. He's confronted barriers in his life in the past. He's a generous person who cares about his family. And, as the Court is aware, you know, methamphetamine can be a huge barrier to people doing what they want to do and what their true morals and priorities are.
>
> This condition is intended specifically to ensure that that barrier does not continue to plague Mr. Greenwood; that he is able to think clearly and follow through with what his, you know, desires and priorities are, which is ensuring that he comes to this Court; that he is able to take care of his family; and that he is a positive member of the community.

Ex. A at 18–19. Mr. Greenwood also argued that his criminal history was mitigated, and that the failures to appear cited by the government were not predictive of his performance if released here, because his prior cases did not involve active court supervision and support. *Id*. at 19–22. Furthermore, Mr. Greenwood emphasized his lifelong ties to the community and powerful motivation to follow the Court's rules in order to support his pregnant partner. *See id*. at 22–23.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

### G. The Pretrial Services Department agreed that Mr. Greenwood should be released on conditions.

The Pretrial Services Department recommended that Mr. Greenwood be released to inpatient SUD treatment, with the added condition of electronic monitoring. *See* Ex. A at 25–26. The Pretrial Services Department carefully considered the relevant factors, including the various arguments raised by the government. Ultimately, the Pretrial Services Department concluded that release was appropriate, and that electronic monitoring would effectively manage any risk presented. *See id*.

In reaching this conclusion, the Pretrial Services Department agreed that Mr. Greenwood's criminal history was not aggravated, even though the present charge was serious, noting Mr. Greenwood's "criminal history is not necessarily unique, it does appear to me like somebody who is dealing with addiction issues and is improperly cognizant, and that's what, in spite of the fact that this incident is necessarily egregious." *Id*. at 26. The Pretrial Services Department, with its expertise in pretrial supervision and risk management, and familiarity with typical court records and proceedings in Washington, recognized that Mr. Greenwood's criminal history did not represent an unmanageable risk, but rather a risk that could be addressed by SUD treatment and active supervision. And the Pretrial Services Department did not ignore the "egregious" or very serious nature of the present charge in reaching its recommendation. *See id*.

### H. The Magistrate Court ordered Mr. Greenwood detained pending trial, but recognized this decision was difficult to make when weighing the Bail Reform Act (BRA) factors.

Honorable Judge Creatura recited some of the factors he must consider under the Bail Reform Act and implored Mr. Greenwood to "understand that it's a difficult decision." Ex. A at 27. Judge Creatura proceeded to weigh the relevant factors.

Judge Creatura discussed the seriousness of the present charge at length, ultimately deeming the nature and circumstances of the charge "egregious." Ex. A at

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

29. Judge Creatura recognized that Mr. Greenwood "d[oes no]t have a significant criminal record, frankly." *Id*. However, Judge Creatura raised concern that "some of the things that have happened over the course of the last year tells me that this activity – criminal activity is escalating in a way that is a real potential danger to the community." *Id*. at 30. He noted as a basis for this concern that Mr. Greenwood was arrested in this case while on court supervision, that firearms were seized from his residence, and that the government alleged he went to a power substation while being surveilled prior to his arrest. *Id*.

Judge Creatura recognized that SUD and financial need were the primary risk factors presented, explaining: "Look, I don't -- I don't ever want to put somebody in jail because of a drug addiction. And I also never want to put somebody in jail because of poverty. And I think Ms. Fish has accurately stated that right now those are two of your largest challenges." Ex. A at 31. And Judge Creatura noted that Mr. Greenwood had housing, even if difficult to maintain, and that he was in a stable relationship with a baby on the way. He opined "I can imagine nothing that's a stronger tie to the community than those things." *Id*. at 31.

Judge Creatura nonetheless detained Mr. Greenwood based on risk of danger. He shared his wish that Mr. Greenwood's ties could overcome the burdens he faced. Yet he ultimately concluded that Mr. Greenwood should be detained:

> This program for drug treatment would be very good if not for the overriding considerations of the other factors I've told you about. I cannot -- I cannot release you with the belief that you can be successfully supervised at this time without being a danger to the community, based on what I have presented before me now.

Ex. A at 32. The Magistrate Court subsequently entered a written detention order. *See* Dkt. No. 16.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

## I.     Since the original detention hearing, Mr. Greenwood has taken further steps to set up a longer-term stable plan for release.

Since the original detention hearing, Mr. Greenwood has confirmed further positive supports for his release plan, and has submitted an application for supportive sober housing to follow his completion of inpatient SUD treatment. Mr. Greenwood's partner has also been accepted into supportive and safe housing in the community. She is no longer reliant on Mr. Greenwood to provide for her housing and basic needs. If released, Mr. Greenwood certainly intends to support his partner and baby. However, the immense stress of being their sole provider will be removed. Instead, he will know that they are safe and comfortable, and not dependent on his earnings for their essential needs.

## III.    ARGUMENT

### A.     Standard of Review

Mr. Greenwood has a constitutional right to have decisions that impact his pretrial liberty be decided by a United States District Court Judge. *See* United States Constitution, Article III, §§ 1 and 2. Because of this, a "district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings." *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). *See also* 18 U.S.C. §§ 3145(b)–(c). In addition, "the ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* at 1193. This Court must review the evidence before the Magistrate Court and any additional evidence proffered by the parties "and make its own independent determination whether the magistrate's findings are correct with no deference." *Id*.

MOTION TO REVOKE DETENTION ORDER
(*United States v. Greenwood*, MJ23-5000-1) - 11

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

**B.      The Bail Reform Act**

"[I]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act, 18 U.S.C. § 3142, encapsulates this presumption in favor of release. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will *reasonably assure* the person's appearance in court and the safety of the community. 18 U.S.C. § 3142(c)(1) (emphasis added). Accordingly, before a person may be detained, the government must prove by clear and convincing evidence that a person poses a danger to the community, or by a preponderance of the evidence that a person poses a flight risk. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); 18 U.S.C. § 3142(f).

Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention."). Even when a person is charged with a serious crime or has a significant prior convictions, there may be release conditions that will reasonably assure the safety of the community. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

**C.      Any statutory presumption of detention has been rebutted here.**

The BRA creates a rebuttable presumption of detention for those charged with "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed[.]" 18 U.S.C. § 3142(e)(3)(C). Notably, this is the same rebuttable presumption invoked for numerous

MOTION TO REVOKE DETENTION ORDER
(*United States v. Greenwood*, MJ23-5000-1) - 12

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

other charges, including the majority of drug felonies charged in this district. *Cf.* 18 U.S.C. § 3142(e). That presumption places a burden upon the defense to produce *some* evidence that the defendant is not a flight risk or a danger to the community. *See United States v. Hir*, 517 F3d 1081, 1086 (9th Cir. 2008). Once the burden of production is met by the defense, the government has the burden of persuasion. *Id.*

Because the Complaint fails to specify whether the government charges Mr. Greenwood with violating 18 U.S.C. § 1366(a) (which would trigger the presumption) or § 1366(b) (which would not), it is doubtful any presumption applies here. Nonetheless, Mr. Greenwood has more than rebutted any such presumption with "some evidence" that he does not present an unmanageable risk of flight or danger. He has demonstrated his deep ties to the community and has confirmed a release plan that specifically manages the risk factors claimed by the government: SUD and financial difficulties. Mr. Greenwood would release to an inpatient SUD treatment program to then transition to sober housing with support for employment. His partner is herself in supported housing and is expected to continue to receive community-based housing and support her after she gives birth to her and Mr. Greenwood's child.

**D.** **The government has not met its burden to show by a preponderance of the evidence that Mr. Greenwood presents an unmanageable risk of flight.**

To maintain its motion for detention, the government carries the burden of demonstrating by a preponderance of the evidence that Mr. Greenwood presents an unmanageable risk of flight. *Gebro*, 948 F.2d at 1121; 18 U.S.C. § 3142(f). The government's argument fails here, and was not adopted by either Pretrial Services or the Magistrate Court.

The government's primary argument that Mr. Greenwood presents a risk of flight is that Mr. Greenwood has failures to appear in mostly dated state court cases:

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4

> He [] has 11 failures to appear. Most of them are old, and I don't tend to try to emphasize that. But what I will point out is that there is a long pattern of failure to appears, but a very recent one, as well. In May -- May 25th of this -- of 2022 he -- a bench warrant was issued after he failed to appear for a hearing in the Kitsap County felony case. So that didn't -- that happened fairly recently.

5
6

Ex. A at 14. However, the government failed to account for the lack of active court supervision on these prior cases or the circumstances of those failures to appear.

7
8
9
10
11
12
13
14
15
16
17

Indeed, ten of the referenced failures to appear occurred on driving-related misdemeanors. These cases would have involved unsupervised release. And even some of those failures to appear were for failure to pay the fine imposed. The sole recent failure to appear—in May 2022—was a failure to appear on a *mailed summons* issued in a case in Kitsap County. *See* Ex. B. As detailed in the Pretrial Services Report, Mr. Greenwood was moving right around this time, and struggling to maintain a stable address. A missed mailed summons is not an indication of disregard for court orders or risk of flight. Indeed, after the service of that warrant, Mr. Greenwood's attendance at court and appointment of counsel, the record is clear that he indeed kept in good contact to ensure he would not miss his next court date. *See* 22-1-00355-1, Dkt. (Kitsap Co. Sup. Ct.).

18
19
20
21
22
23
24
25
26

This record does not demonstrate that Mr. Greenwood is a flight risk. To the contrary—he has shown his desire to appear for scheduled hearings and follow court orders once he is aware of them. Furthermore, Mr. Greenwood has lived his entire life in this district, attended school in this district, and worked for years in this district. His closest family ties are in this district. His long-term partner, who is expecting Mr. Greenwood's first child, is in this district. As Judge Creatura remarked, "I can imagine nothing that's a stronger tie to the community than those things." *Id*. at 31. Mr. Greenwood simply does not present an unmanageable risk of flight.

MOTION TO REVOKE DETENTION ORDER
(*United States v. Greenwood*, MJ23-5000-1) - 14

**E.      The government has not met its burden to show by clear and convincing evidence that Mr. Greenwood presents an unmanageable risk of danger.**

Alternatively, the government must demonstrate by "clear and convincing evidence" that detention is required because Mr. Greenwood creates an unmanageable risk of danger. *Gebro*, 948 F.2d at 1121; 18 U.S.C. § 3142(f). Proving danger by clear and convincing evidence is no small task:

> "Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that [the asserted factual contentions are] highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir. 2004) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316, (1984)).

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*, Inc., 897 F.3d 1008, 1020 (9th Cir. 2018) (brackets in *OTR Wheel Eng'g*).

The government has not met its burden here. To the contrary, the government has identified very *manageable* risk factors. And Mr. Greenwood has proposed conditions of release that address each of those risk factors. Indeed, the government *conceded* that inpatient treatment was an appropriate release plan that would manage any risk presented by Mr. Greenwood's SUD. *See* Ex. A at 15 ("The defense is proposing a relatively short-term inpatient treatment facility. That may be great for 30 days. It will be -- keep him out of the community, address the substance abuse."). But the government raised concern over what release would look like *after* the inpatient treatment, when Mr. Greenwood would have to deal with his SUD, housing needs, and financial stress in the community. *See id*. at 15–16.

But these risk factors are more than adequately addressed by the proposed release plan and conditions of release. As addressed before, but further solidified since the original detention hearing, Mr. Greenwood plans to transition from inpatient treatment to sober and supportive housing through a community-based service provider.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Through that program, he would continue to live in a sober community, he would continue to participate in outpatient treatment and recovery support groups (in addition to regular drug testing), he would have support from on-site staff, and he would receive job placement as well as supportive training, mentorship, and services (such as transportation). The additional condition recommended by Pretrial Services— Electronic Monitoring—will allow the Pretrial Services Department to constantly monitor Mr. Greenwood's location and will require him to inform his supervising officer in advance of his plans.

The government's concern about the "desperate need for money" driven by the imminent birth of Mr. Greenwood's first child, Ex. A at 14, has also been addressed. Mr. Greenwood's partner is now housed in a stable and supportive program in the community. Through this program, she is also arranging safe and supportive housing for herself and the baby after she gives birth. Mr. Greenwood will no longer feel the sole responsibility to provide for his partner and, soon, their baby. He will be able to focus on his sobriety and support them as much as he is able to, without the pressure of being their only support.

Finally, the allegation that Mr. Greenwood possessed firearms is also not a valid basis upon which to find an unmanageable risk of danger:

> If the possession of guns, standing alone, could be said to constitute clear and convincing evidence sufficient to support the entry of a detention order on grounds of dangerousness, a very large number of persons accused . . . would be subject to pretrial detention as a matter of course.

> Such a conclusion is contrary to the legislative history of the 1984 Bail Reform Act, 18 U.S.C. §§ 3141–3150, which states that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial."

1    *United States v. Ridinger*, 623 F. Supp. 1386, 1392–93 (W.D. Mo. 1985) (quoting

2    S.Rep. No. 225, 98th Cong. 1st Sess. 6–7 (1983), *reprinted in* 1984 U.S.Code Cong. &

3    Ad.News 3182, 3189) (footnote omitted). Here, the government alleges it found

4    unregistered firearms at a shared residence. There is no allegation that Mr. Greenwood

5    ever used those guns in any way, let alone used them in connection with the § 1366

6    charge. The government has not shown by clear and convincing evidence that Mr.

7    Greenwood presents an unmanageable risk of danger.

8    **F.     The BRA requires release because the proposed release plan and**
9    **conditions reasonably assure the Court that any risk of flight or**
        **danger can be managed.**

10          Ultimately, the Court must impose "the least restrictive" condition, or set of

11   conditions, that will reasonably assure the Court that any risk of flight and risk of

12   danger can be managed. 18 U.S.C. § 3142(c)(1)(B). Release conditions need only

13   provide reasonable assurances, as opposed to guarantees, of community safety, *Hir*, 517

14   F.3d at 1092 n.9. "Doubts regarding the propriety of release should be resolved in favor

15   of the defendant." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

16   Given this principle, "the court is to rule against detention in close cases[.]" *United*

17   *States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Calif. June 18, 1992) (citing *Motamedi*).

18          Here, Mr. Greenwood has proposed conditions of release that address the few

19   risk factors argued by the government. Under the proposed release plan, Mr.

20   Greenwood would participate in intensive SUD treatment for the first time in his life.

21   Through this treatment program, he would also be screened for and receive any mental

22   health support he needs. Furthermore, he plans to transition to sober and supportive

23   housing that is offered in conjunction with job placement and support. His partner is

24   also now in a supportive community program, and no longer dependent solely on Mr.

25   Greenwood to support her and their soon-to-be-born baby. The additional condition of

26   Electronic Home Monitoring—a condition that Mr. Greenwood has completed

successfully in state court when imposed as a sentence—will provide the Court with added assurances, monitoring, and accountability with Pretrial Services.

The Court should follow the recommendation of the Pretrial Services Department, which has an impressive success rate in supervising individuals accused of all sorts of serious offenses. For example, for Fiscal Year 2022 (ending September 30, 2022), only 6 of the 657 people released under pretrial supervision in this district failed to appear. In other words, the Pretrial Services Department in this district had an over 99 percent success rate. *See* Admin. Ofc. of U.S. Courts, Statistics & Reports, *Table H-13—Federal Pretrial Services Judicial Business (Sept. 30, 2022)*, https://www.uscourts.gov/statistics/table/h-13/judicial-business/2022/09/30. This success rate is even better than that of Pretrial Services nationwide, which is also excellent. *See, e.g.,* Thomas H. Cohen, Ph.D., U.S. Dep't of Justice, Bureau of Statistics, *Pretrial Release and Misconduct in Federal District Courts*, 2008-2010 (Nov. 2012) (finding that 96 percent of released defendants appear without incident). This high rate of success remains even for people deemed "high risk" who are released. Nationwide, since 2009, Pretrial Services' data has found that only 2.9 percent of people in the highest risk category were re-arrested for a violent crime while on release. Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (Sept. 2018) at 25, https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.

The Court should release Mr. Greenwood on the recommended conditions. The Pretrial Services Department has demonstrated its excellence and expertise in pretrial release. The Department's record adds weight to its recommendation for release. But even more, the Department's skill and experience is an invaluable asset to the Court and Mr. Greenwood on release. Unlike prior instances of unsupervised release in state court, Mr. Greenwood will have a Pretrial Services Officer (or more likely two Officers, with

MOTION TO REVOKE DETENTION ORDER
(*United States v. Greenwood*, MJ23-5000-1) - 18

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Electronic Monitoring) who is checking in with him and whom he can reach out to with questions. Pretrial Officers will not only support him with accountability and structure, but also are adept at problem solving should any unexpected challenges arise. The proposed conditions, with supervision by this district's Pretrial Services Department will effectively manage any risk, and more than reasonably assure the Court that Mr. Greenwood poses no risk of danger nor of flight. The Court should revoke the Detention Order and order Mr. Greenwood released on conditions.

## IV.   CONCLUSION

Mr. Greenwood asks this Court to revoke the Detention Order and order him released on conditions. The proposed conditions more than reasonably assure his reappearance and the safety of the community.

DATED this 19th day of January 2023.

Respectfully submitted,

s/ *Rebecca Fish*
Assistant Federal Public Defender
Attorney for Matthew Greenwood

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**