```
 1               UNITED STATES DISTRICT COURT FOR THE

 2               WESTERN DISTRICT OF WASHINGTON (TACOMA)

 3    _____

 4    UNITED STATES OF AMERICA,     )
                                    )
 5              Plaintiff,          )
                                    )
 6         vs.                      ) Cause No. 3:23-mj-05000-JRC
                                    )
 7    MATTHEW GREENWOOD,            )
                                    )
 8              Defendant.          )
                                    )
 9    _____

10                          HEARING

11         The Honorable J. Richard Creatura Presiding

12                      January 6, 2023

13    _____

14

15

16

17

18

19

20

21

22

23

24    TRANSCRIBED BY:  Reed Jackson Watkins, LLC
                       Court-Approved Transcription
25                     206.624.3005
```

EXHIBIT A

```
 1                    A P P E A R A N C E S

 2

 3   On Behalf of Plaintiff:    TODD GREENBERG

 4                              US Attorney's Office

 5                              700 Stewart Street

 6                              Suite 5220

 7                              Seattle, Washington 98101-1271

 8

 9

10   On Behalf of Defendant:   REBECCA FISH

11                              Federal Public Defender's Office

12                              1331 Broadway

13                              Suite 400

14                              Tacoma, Washington 98402

15

16

17

18

19

20

21

22

23

24

25
```

1                   I N D E X   O F   P R O C E E D I N G S

2

3    January 6, 2023 proceedings commence........................    4

4    Argument....................................................    4

5    The Court's Ruling..........................................   26

6    January 6, 2023 proceedings concluded.......................   33

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                              -o0o-

2                         January 6, 2023

3

4        THE COURT:  MJ-23-5000-01, if the parties could make their

5     appearances.

6        MR. GREENBERG:  Your Honor, Todd Greenberg for the United

7     States.

8        THE COURT:  Good morning.

9        MS. FISH:  Good morning, Your Honor.  Rebecca Fish on

10    behalf of Mr. Greenwood, the defendant.

11       THE COURT:  Good morning.

12       Good morning, Mr. Greenwood.

13       Also present in the courtroom is Patrick Robertson for

14    Pretrial Services.

15       Good morning, Mr. Robertson.

16       MR. ROBERTSON:  Good morning.

17       THE COURT:  Mr. Greenwood, we're here today for purposes

18    of a detection hearing.  I have reviewed the initial

19    Pretrial Services report, as well as the supplement that was

20    provided this morning.  Also, Mr. Greenwood [sic] provided

21    me a copy of an affidavit that was used to support a search

22    warrant application, which I have also reviewed.

23       I believe this is the Government's burden, so I'll ask the

24    Government to go first.

25       MR. GREENBERG:  Thank you, Your Honor.
```

1             First, I'll note and then I understand this was discussed

2       at the last hearing, but there is a presumption --

3       rebuttable presumption, but a presumption for detention in

4       this case based on the nature of the charge; that --

5       specifically, that 1366 triggers that presumption.

6             And I would say that when we look at the four statutory

7       detention factors, each of the factors supports detention in

8       this case.  And I'll go through those with the Court.

9             First is in the nature and circumstances of the offense.

10      It goes without saying -- and I'm not going to overemphasize

11      here, but this was an extremely serious offense.  It was

12      very dangerous; it was reckless; and it caused a lot of

13      damage and harm to the community, as well.

14            The complaint outlines that at least $3 million of damage

15      was caused by this -- these four offenses.  And that only

16      pertains to two of the substations that were damaged.  We

17      are still waiting for additional information from the other

18      two.  But it's at least $3 million.

19            It will take, it's estimated, three years to fully repair

20      those two substations that were heavily damaged.

21            And the effect on the community was huge.  Thousands of

22      people lost power on Christmas Day.  It's cold outside.

23      People rely on the power for their heat.  It's been reported

24      that there were individuals in the community that lost power

25      and were unable to use their medical devices.  This was an

1    extremely serious and damaging offense.

2      The motive of these crimes is under investigation.  The

3    defendant, Mr. Greenwood, has explained what he purports the

4    motive to be, and that was to commit a series of burglaries

5    while the power was out.  Even if that is true, the

6    recklessness and the lack of judgment that is displayed

7    by -- in order just to commit some burglaries by putting the

8    power out, four in four separate locations, it's just beyond

9    words.

10     So the judgment -- and when it comes to release, of

11   course, when it boils down to its essence, is can the Court

12   trust a particular individual.  And I would say the judgment

13   that was displayed here indicates that the Court cannot.

14     The second statutory factor is the --

15   THE COURT:  Before you move on to the second point, I'm

16   interested in the evidence on motive.  And as you've cited,

17   the complaint discusses the defendant's admission or

18   statement that it was for the purpose of committing a

19   burglary.  This statute falls within the rubric of

20   terrorism.  Is there any evidence that this is politically

21   motivated or motivated for something other than burglary?

22   Or is this -- is your evidence solely related to the stated

23   motive of the defendant?

24   MR. GREENBERG:  Yeah, Your Honor.  It's too early for me

25   to definitively comment on that.  I mean, I'll answer the

1        Court's question, but I'll caveat it by saying there is

2        investigation left to do that I think will shed light on

3        this.  And, specifically, it's going to be searching the

4        cell phones that we have in our possession and that we have

5        warrants to search.  That hasn't been done yet.  And so I

6        think that will be illuminating.

7          The evidence so far that we have -- most of that is coming

8        from the defendant, as well as other witnesses -- indicates

9        that there's a reason to believe the burglary motive.  But,

10       again, it's preliminary, and so I hesitate to really credit

11       that fully.  But just, you know, being forthright with the

12       Court, I don't have any threat evidence to suggest

13       otherwise.  But I think it's yet to be determined.

14         THE COURT:  Um-hum.  Okay.  Thank you.

15         MR. GREENBERG:  Yes.

16         The next factor I was going to address is the nature and

17       seriousness of the danger to the community if the defendant

18       were to be released.  And this is where my primary concern

19       is.  I think the record before the Court should make the

20       Court very concerned that this is a defendant at high risk

21       of reoffending.  There's several reasons I say that.

22         One -- and I -- and I guess I'll address this later, as

23       well.  But the defendant apparently has a serious addiction

24       to methamphetamine.  That makes anyone -- and obviously from

25       the record here, this defendant dangerous in the community.

1        But when we look at the conduct here, not only was the --

2        these four attacks very serious crimes, but then when we

3        look at what happened after that in the days following

4        that -- and this is when the headlines of the newspapers

5        were talking all about these particular crimes.  What did

6        Mr. Greenwood and his codefendant do?  Did they, you know,

7        bunker down and just try to lay low?  No, they didn't.  And

8        that's why we had provided this Court a search warrant

9        affidavit because it documents what happened those next two

10       nights late at night when Mr. Greenwood and Mr. Crahan were

11       casing out another electrical substation.

12       They went out there, you know, 2:00 in the morning through

13       5:00 in the morning two consecutive nights.  They were

14       driving down roads with headlights off.  They got out of

15       their car.  They spent substantial amounts of time in an

16       area that was only related to accessing a subsection.

17       And so while all this was going on -- all this attention

18       was being brought to their offenses, they were out planning

19       the next very similar offense.

20       Now, what were they doing out there?  According to

21       Mr. Greenwood, they were looking for large trees that were

22       abutt- -- that were abutting the power lines so they could

23       saw the trees down and take out the power lines that way.

24       I don't know why he would make that up, but that's what

25       he's claiming.  They did have a chainsaw in their truck,

1     but --

2       So having committed these offenses and planning to do yet

3       another similar but slightly, you know, different equally

4       dangerous power attack, again, shows that this is a

5       defendant who is at high risk of reoffending.

6       And then when we look at the last year or so, his criminal

7       record and his conduct, again, very concerning.  Just in

8       2021, he had the fortune of going through a pretrial

9       diversion for a weapons charge in Pierce County.

10      But then when we look at just these past few months, in

11      April of 2022 -- so eight months ago or so -- Mr. Greenwood

12      stole a vehicle at a casino in Kitsap County.  He was

13      charged with felony crimes.  Those are pending against him

14      still today, according to the Pretrial Services report with

15      the next court date being in January -- well, this month.

16      While that felony case was pending against him, in July of

17      2022 --

18      THE COURT:  Wait a minute.  Which charge are you talking

19      about involving the casino?

20      MR. GREENBERG:  That is on -- I'm looking at the original

21      Pretrial Services report.  I don't have a printed copy of

22      the amended one or the supplemental one.  But it's the -- on

23      Page 6 of the original, it has the date of offense of April

24      2nd, 2022, Kitsap Superior Court.

25      THE COURT:  Oh, taking a vehicle without permission.

1          MR. GREENBERG:  Taking a motor vehicle, correct.

2          THE COURT:  I see.

3          MR. GREENBERG:  So that's a felony charge that is pending

4     against Mr. Greenwood for a crime he committed in April.

5          While that case was pending, he was convicted in July of

6     two offenses -- these are misdemeanors -- possession of a

7     dangerous weapon and possession of another person's

8     identification.

9          He was sentenced to, what looks like, about 18 days of

10    jail.  But, more importantly to the purpose we're here

11    today, 24 months of supervised -- of probation, a condition

12    of which was not to have any further law violations.

13         Instead of abiding by that, the defendant committed the

14    crimes that he is now charged with in federal court.  And

15    so --

16         THE COURT:  Including no firearms or dangerous weapons,

17    when you seized firearms at his residence.

18         MR. GREENBERG:  Correct.  Correct.

19         THE COURT:  Let me ask you something in relation to those

20    two charges.  He has another court date in Kitsap County on

21    January 26th and may be in violation of the terms of his

22    supervision for the Issaquah case.  Would the federal court

23    lose jurisdiction of him if either of those jurisdictions

24    took custody of him?

25         MR. GREENBERG:  I don't think we would lose jurisdiction,

1    Your Honor.  I mean, we could -- if he went into custody

2    somewhere while this case was pending, we could always writ

3    him back over here, if need be.

4       THE COURT:  And you don't know whether or not they're

5    pursuing those charges, as far as detention?

6       MR. GREENBERG:  I don't.  I don't know.  I know that the

7    Kitsap County prosecutors are pursuing that felony case

8    against him.  I don't know if they're pursuing anything

9    related to a bond violation or the like.

10      THE COURT:  Okay.

11      MR. GREENBERG:  And I would fully expect the Issaquah

12   Municipal Court to pursue a violation, given the nature of

13   the particular violation, which, as the Court points out,

14   for possession of unlawful firearms, as well as, you know,

15   these -- the damage to the electrical facilities.

16      But I think the point I'm really trying to make there is

17   that the recent track record -- recent.  This is the past,

18   what, six, eight months -- that Mr. Greenwood is showing the

19   Court is committing crimes, being out on bond, committing

20   more crimes, getting probation, violating probation by

21   committing an escalating series of crimes.  This is not

22   someone who is safe in the community at this time to be

23   released.

24      The third factor, Your Honor, is the weight of the

25   evidence.  And, as we all know, according to the Ninth

1   Circuit, this is the least weighted factor, but nonetheless,

2   one of the four factors.

3   And here the weight of the evidence is extremely strong

4   against Mr. Greenwood.  I guess first and foremost is the

5   fact that he has confessed to these crimes.  He gave a

6   detailed, lengthy post-Miranda statement to the FBI

7   confessing to the crimes, as charged.

8   We have the phone locator information -- two sets at this

9   point.  One was the cell tower records; and now we have,

10   pursuant to a search warrant, records from Mr. Greenwood's

11   Google account.  Both sets of data put him at all four

12   attack sites.  And, in fact, there's only two devices -- his

13   and Mr. Crahan's -- that were at all four of these sites.

14   We have a surveillance image that looks a lot like

15   Mr. Greenwood.  And the individual who committed the

16   offenses was wearing a set of clothing, all of which -- or

17   at least most of which was recovered from Mr. Greenwood

18   during the search warrants.

19   And then we have witness statements, including public

20   statements, that Mr. Greenwood's girlfriend made to the

21   Seattle Times as published where she acknowledges

22   Mr. Greenwood committed these offenses -- talked to her

23   about it.  She says that he did it to commit burglaries and

24   that they saw a prior series of attacks on television and

25   then researched how to do it themselves for this purpose.

1       So the evidence is strong.

2         And then, lastly, let me address the history and

3       characteristics of the defendant.  There are reasons for

4       real concern here, and I'll start with the methamphetamine

5       addiction.

6         According to the report from Pretrial Services, which is

7       partially based on his girlfriend's statements to them, it's

8       been about 15 years that Mr. Greenwood has had a meth

9       problem.  It sounds like, according to his girlfriend, that

10      there was a substantial period of time where he was clean,

11      off of meth, but then recently has relapsed.  And I think

12      that that could very well be why we're seeing this pattern

13      of conduct throughout 2022 of these crimes -- of the

14      criminal activity.

15        He also has a lengthy criminal history.  It's not the most

16      serious criminal history, so I don't want to overstate it.

17      But what is significant to me is how consistent it is.  And

18      repeatedly through the years, this is someone who has

19      violated the law, not obeyed Court orders, and just

20      continues to seem to do whatever he wants to do.

21        And I think that, again, when it comes to trust in the

22      community, this is not a track record to establish trust

23      for -- with this Court.

24        I've addressed the probation, the fact that he's already

25      violating Court orders by committing these offenses.

1       He also has 11 failures to appear.  Most of them are old,

2       and I don't tend to try to emphasize that.  But what I will

3       point out is that there is a long pattern of failure to

4       appears, but a very recent one, as well.

5       In May -- May 25th of this -- of 2022 he -- a bench

6       warrant was issued after he failed to appear for a hearing

7       in the Kitsap County felony case.  So that didn't -- that

8       happened fairly recently.

9       According to Mr. Greenwood, when he spoke to the FBI, he

10      was motivated to commit these crimes because he's going

11      through some hard times.  And the things he talked about

12      were his father being in prison, his girlfriend being

13      pregnant and very close to giving birth, their lack of a

14      stable residence, his unemployment, and basically his

15      desperate need for money.  On top of that, he's got the meth

16      problem.

17      The defense is proposing a relatively short-term inpatient

18      treatment facility.  That may be great for 30 days.  It will

19      be -- keep him out of the community, address the substance

20      abuse.  But that's a short time.  This is 30 to 45 days.

21      And 30 to 45 days, all these same things are going to be in

22      place.

23      He's going to have to deal with his meth issue in the

24      community.  His girlfriend's child will presumably be born.

25      They will need even more money.  The residence is still

1        going to be something he has to address.  He's still going

2        to be unemployed and will need to find a job.  There's --

3        none of those circumstances that he says drove him to commit

4        these crimes are going to be different in 30 to 45 days.

5            So while I commend the defense for proposing, you know, a

6        program like this and tracking it down in short order, I

7        don't think it fully addresses all of the circumstances that

8        I've outlined for the Court.

9            And the ties that the defendant otherwise has to the

10       community aren't enough to rebut the presumption for

11       detention.  So we would ask the Court to enter detention.

12       THE COURT:  Thank you, Counsel.

13       Ms. Fish.

14       MS. FISH:  Good morning, Your Honor.

15       THE COURT:  Good morning.

16       MS. FISH:  I'd like to start by addressing the

17       post-conditions of release and the Government's concern

18       about them and then I'll return to the 3142 factors.

19           I can provide the Court, and I've provided to the

20       Government and Pretrial Services, a confirmation letter from

21       the American Behavioral Health Systems program that I

22       propose Mr. Greenwood be released to.

23           I believe the Court is somewhat familiar with ABHS's

24       programs, as certainly past clients of mine in front of

25       Your Honor has attended these programs.

1          ABHS, every program that they run have staff on-site for

2      substance use disorder treatment and mental health

3      treatment.

4          Mr. Greenwood was evaluated by a licensed substance use

5      disorder evaluator who did a comprehensive ASAM evaluation

6      and recommended in-patient treatment with ABHS as the

7      recommended program.

8          They do provide door-to-door transportation and are

9      prepared to pick him up at the FDC next Wednesday.

10         I will also share I've had several clients attended their

11     programs and do really well.  One of things they do in their

12     programs is work with clients or patients for them

13     holistically.  So they look at folks' mental health needs;

14     substance use disorder needs; and, in general, community

15     support needs.

16         So every client I've had who has completed their program

17     has left with a sober housing plan.  I believe for

18     Mr. Greenwood has some very good options would be an Oxford

19     house or similar sober housing community; or Weld, which is

20     a program in King County which focuses -- is a sober housing

21     staffed program that also focuses on employment and job

22     readiness.  And I think that either of those or several

23     similar programs that exist in our community would be good

24     fits for him.

25         I have a -- we have a social worker in-house in our office

1      who can work with Mr. Greenwood on that.  In my experience,

2      the staff at the ABHS also work diligently with their

3      patients to make sure that when someone leaves, they have

4      not only an intensive outpatient program set up and any

5      prescriptions set up for ongoing -- any mental health needs,

6      but also that they have a good sober housing plan that is

7      stable and a supportive community.  So I think --

8          THE COURT:  Let me -- let me ask you -- ABHS, I believe,

9      like other in-patient treatment programs, are not really

10     designed to be a secure facility, are they?

11         MS. FISH:  They're -- I -- they do expect patients to stay

12     there, you know, the whole time they're there and not to,

13     you know, just, like, leave to go to the store.  They

14     provide meals, and the expectation is that patients in the

15     program will be (inaudible).

16         THE COURT:  I know.  But there's no security, in fact, is

17     there?

18         MS. FISH:  Correct, Your Honor.  It's not a jail.  It's

19     not -- it's not a -- like Western State or a hospital where

20     they're -- people are actually prevented from leaving.

21         But I do think that it is -- you know, for folks like

22     Mr. Greenwood who really do want to get treatment, I think

23     it's perfectly, you know, reasonable and secure.

24         And the Government has not raised any serious risks of

25     flight here.  Mr. Greenwood's entire life has been in this

1      district.  He's never left the country.  He doesn't have

2      anywhere to go outside of this district.  His baby is going

3      to be born soon in this district.  He has every reason to

4      stay here.  I don't think that there's a serious risk of

5      flight for him.

6         And Pretrial Services has proposed an additional condition

7      that I have no objection to that I think could further

8      address that concern to the Court, which is location

9      monitoring.  And he could be on home detention, which would,

10     you know, allow him to participate in treatment there and to

11     attend to legal; medical; or, in the future, work needs once

12     he's done with in-patient program -- with the in-patient

13     portion of his treatment.

14        So I do think that the release plan is actually longer

15     term than portrayed by the Government because it is not --

16     while the in-patient portion, you know, would likely last

17     only up to about 45 days, there is a transition plan that is

18     part of that program, and that would transition him to

19     stable, better housing once he graduates from that program.

20        I would also note that, you know, the primary concern the

21     Government has raised here is as to danger to the community,

22     specifically citing essentially what they believe to be

23     Mr. Greenwood's, you know, poor behavior, poor judgment at a

24     time when he was using methamphetamine.  And this condition

25     that I'm proposing and this release plan is specifically

1    designed to address that concern.

2      You know, he's a very, you know -- he's lived his whole

3    life in this community.  He's confronted barriers in his

4    life in the past.  He's a generous person who cares about

5    his family.  And, as the Court is aware, you know,

6    methamphetamine can be a huge barrier to people doing what

7    they want to do and what their true morals and priorities

8    are.

9      This condition is intended specifically to ensure that

10   that barrier does not continue to plague Mr. Greenwood; that

11   he is able to think clearly and follow through with what

12   his, you know, desires and priorities are, which is ensuring

13   that he comes to this Court; that he is able to take care of

14   his family; and that he is a positive member of the

15   community.

16     So I do think that the conditions are sufficient to

17   address the concerns raised by the Government.

18     Moving onto the -- some of the statutory factors, I would

19   note that the rebuttable presumption in this case that the

20   Government raised is no greater than the rebuttable

21   presumption in nearly every felony drug case filed in this

22   district.  It is not some higher standard.

23     And, in fact, you know, while the charge is absolutely

24   serious, it does not carry a mandatory minimum the way some

25   of those cases do, or other factors relevant to the charge

```
1        itself that could cause the Court to concern -- be concerned
2        someone might not appear.
3          So it is not, sort of, the extreme presumption that I
4        think -- not the Government but perhaps some members of the
5        media have described this case as.
6          So I do think that, you know, it's certainly not an
7        insurmountable presumption, and I think it has been
8        successfully rebutted here; the proposed release plan.
9          There's just -- with the proposed release plan,
10       Mr. Greenwood will be attending to the primary factor
11       concern for the Government, which is his methamphetamine
12       addiction, and will be focused on doing that and to address
13       any obligation.
14         The Pretrial Services department will have electronic
15       monitoring, will be checking with him regularly, and will
16       know his whereabouts.  If he does want to attend a legal
17       meeting or a medical appointment or in the future to work,
18       he'll have to clear that schedule in advance with Pretrial
19       Services, so it will be, you know, a known thing and also a
20       matter of accountability for him, which I think is also
21       positive for getting back on his feet to working again, to
22       have that scheduling and accountability.
23         And I do think that there's reason to trust Pretrial
24       Services' recommendation here, as well.  Our district has a
25       very -- as the Court is well aware -- a very positive track
```

1 record of successful Pretrial Services supervision.  And,

2 indeed, nationwide, the vast majority of people released on

3 pretrial supervision federally indeed do come to court and

4 follow through with their obligations.  And I think they are

5 correct in their assessment that he can and should be

6 released under the conditions proposed.

7  I simply disagree that he presents an unmanageable risk or

8 danger. I don't think that's the case.  Even the -- and

9 Mr. Greenberg correctly noted that his criminal history is

10 not the most serious.  In fact, the majority of them are

11 driving related and particularly driving with a license

12 suspended cases.

13  Having personally in the past worked to look at some of

14 those DOL cases in the state, it really puts especially

15 folks who are poor, in a position where with the interest

16 and collection fees that develop, it becomes almost

17 impossible to get one's license back.  And it can be a

18 really difficult cycle to get out of.

19  That does not necessarily indicate that that person is

20 defiant or does not respect the law.  It's just that they

21 are in this position where it's kind of impossible to escape

22 that.

23  Certainly, you know, while release at this time,

24 Mr. Greenwood has no intention or plan to drive a car.  And

25 if that were necessary in the future for work, I could

1       certainly work with him to mitigate his licensing fees to

2       make sure that's not an issue in the future.

3         As to the Kitsap County and Issaquah cases raised, you

4       know, the Issaquah Municipal -- the misdemeanor case, which

5       is typically unsupervised probation -- and I -- my

6       understanding of the Kitsap case is it was also unsupervised

7       release.

8         He just, I don't think, has had the experience that would

9       be the case with pretrial supervision here of really having

10      a strong relationship with a supervising officer who is

11      really involved in his life, checking in with him.

12        He also has not had serious drug treatment in the past,

13      and so I think that the factors that would be present during

14      pretrial release here are significantly different than on

15      any case he's had in the past; and that, you know,

16      accordingly, I think he will be able to follow through with

17      them because it will not only be, you know, a kind of

18      confusing document from a lawyer he can't get ahold of, but

19      he'll have an officer to check in with regularly.  He'll

20      have myself to check in with regularly.  And, most

21      importantly, he'll have the medical substance abuse

22      treatment that he needs.

23        His history and characteristics, I believe, should be

24      weighed in favor of release.  First and foremost, he is a

25      lifelong resident of this community.  He was born here.  He

1    grew up here.  He went to school here.  His past jobs have

2    been here.  And while his recent work history is limited, he

3    does have positive work history in the past and does have

4    work skills that he could utilize to work in the community.

5      I do also think a transition to a program like Weld where

6    he could work through that housing program would be a

7    positive for him and certainly an option when he's finished

8    with in-patient.

9      Additionally, he has -- all of his family ties really are

10   here, and the most important relationships are here.  He has

11   a baby due next month in this community, and that gives him

12   every reason -- the strongest reason anyone could have to do

13   everything this Court asks.  This is his first child, and he

14   just wants to do whatever he can to, you know, allow that

15   child to have the best life possible.  And that includes

16   following this Court's orders.

17     I, you know, have worked with a lot of clients over my

18   career, and I really know that Mr. Greenwood is committed to

19   this.  He understands how serious this case is.  You know,

20   he was advised by this Court last week -- or I'm sorry --

21   earlier this week and certainly has spoken with me, and he

22   understands the importance of following this Court's orders.

23     So I do think that there is every reason that the Court

24   can trust Mr. Greenwood.  I disagree that his actions

25   indicate any sort of lack of respect for authority.  I think

1    they indicate a person who is dealing with methamphetamine

2    addiction and poverty.  And that's what his record indicates

3    to me is someone whose judgment was not at its best, was not

4    at its healthiest.

5      So I do think the Court can and should release him on

6    these conditions.  Again, I note the seriousness of the

7    charge.  While certainly serious, is no -- is legally no

8    more serious or concerning in terms of the Bail Reform Act

9    than many of the cases filed in this district, including

10   nearly every drug felony case.

11     I do think his ties to this community, his reasons to

12   follow this Court's order beyond this case, while supporting

13   his family, and the proposed release plan confirm that he

14   can be released on conditions.

15     And, finally, you know, I would note, I don't think the

16   Government has advocated for this here, but the Court is

17   well aware that the Bail Reform Act requires release on the

18   least restrictive conditions.  It does not require a

19   guarantee of zero risk.  There is no case in which the

20   condition could provide zero risk of violation or flight.

21     And I think that the conditions here are well tailored to

22   address what really is the risk factor advocated by the

23   Government, which is Mr. Greenwood's methamphetamine

24   addiction and poverty.  And I think that he should -- he can

25   and should be released on those conditions.

1          Again, just emphasizing, the Government conceded this

2     earlier, but there is no indication in this case that it is

3     more serious than the allegations in the complaint or that

4     there's some larger scheme or motive.  There's no evidence

5     of that.  This is, you know, the Government's charge as

6     outlined in its complaint.  And I think that, you know,

7     while certainly we may misunderstand that, sometimes I don't

8     think there's any evidence here that would weigh into

9     (inaudible).

10         THE COURT:  Thank you.

11         Any rebuttal, Mr. Greenberg?

12         MR. GREENBERG:  No, Your Honor.  I think I've covered it.

13    Thank you.

14         Mr. Robertson, on behalf of Pretrial Services -- and, as I

15    said, I have reviewed the reports -- is there anything that

16    you have heard during the presentations that you wish to

17    opine on, considering the recommendation I've already

18    considered?

19         MR. ROBERTSON:  Not specifically, Your Honor.  I would

20    just say that the latest of this report coming to you had a

21    lot to do with the vast discussion that we had about what an

22    appropriate recommendation was.  And I think the defense and

23    the Government raises points that we discussed at length

24    prior to making our decision.

25         On one hand, I agree with Defense that Mr. Greenwood's

1    criminal history is not necessarily unique, it does appear

2    to me like somebody who is dealing with addiction issues and

3    is improperly cognizant, and that's what, in spite of the

4    fact that this incident is necessarily egregious.

5       But I also agree with Mr. Greenberg in that there's no

6    greater problem than someone who commits crimes and then is

7    released and then commits crimes again.

8       So there was a lot of discussion about that, and we kind

9    of went back and forth about what the appropriate

10   recommendation was.

11      Ultimately, we -- ultimately, we landed on let him go to

12   treatment.  Let him get the services he needs.  But we added

13   a location monitor to sort of alleviate some of the other

14   concerns (inaudible).

15      THE COURT:  Thank you, Mr. Robertson.

16      Mr. Greenwood, Mr. Robertson is representing a department

17   that's a branch of the Court.  They're not associated with

18   either the Government or the defense.  We often use their

19   services -- well, always use their services to assist us in

20   making difficult decisions.  And, as you've heard,

21   Mr. Robertson and his colleagues had a difficult decision to

22   make to determine what the recommendation is.  And, of

23   course, those are just recommendations to me.  I'm not bound

24   by them.

25      There are also factors that Pretrial Services is required

1        by their statute not to consider because, at this point, you

2        stand before us innocent until proven guilty.  And Pretrial

3        Services intentionally tries to avoid any consideration of

4        some of the weight of the evidence because that's not their

5        job.  Their job is to determine the same thing that I'm

6        trying to determine, is whether or not you're a risk of

7        flight or a danger to the community.

8          And if I can impose terms and conditions that are

9        sufficient to protect the community and to reduce that risk,

10       then I'm required to do so and to release you.  And if I, in

11       my opinion, don't believe I can, then I have to detain you.

12         Also, you know, you've heard arguments from two very

13       capable counsel.  And Ms. Fish has correctly pointed out

14       that it's not a zero risk.  And at no time when I make a

15       decision is it a zero risk; that sometimes I need to take

16       some risk when I decide to release someone, expecting that

17       they're going to comply with supervision and not violate it.

18         So all of those factors go into the decision that I need

19       to make.  And I would hope you understand that it's a

20       difficult decision.

21         Now, I want to go down the factors because, again, they've

22       been articulated by Counsel.  But I want you to know that

23       I'm following them as best I can.

24         First and foremost, this is a very serious crime you're

25       being charged with.  And because of the nature of the crime,

1    there is a presumption of detention, which means that, you

2    know, the statute says that I'm to presume you to be

3    detained, unless that presumption goes away.

4       Ms. Fish correctly points out that when that is disputed

5    by the defendant and evidence is put forth that the

6    presumption should be ignored, it disappears.  It puts me

7    right back to where I'm starting, and that is trying to

8    evaluate the factors in making the decision for your

9    detention.  Okay?

10      So both counsel have done a good job of articulating that,

11   and I hope you understand it.

12      So let's go down the factors here.  First is the nature

13   and circumstances of the offense.  Now, I noticed your

14   reaction when I asked whether or not the motive for this

15   charge was something other than burglary.  As you know,

16   there has been concern nationwide that perhaps these kind of

17   offenses occurred because someone is trying to make some

18   political statement.

19      The Government has clearly stated that at this point they

20   have no such evidence and that they are relying on your

21   statement that you made that the purpose of this particular

22   offense was burglary.

23      Now, here's another problem with the position I am in.

24   The investigation is just starting.  We don't know where

25   it's going to go.  And oftentimes I'm required to make some

1    decisions based on partial information, a lack of complete

2    information.  That doesn't always work to your benefit

3    because sometimes those decisions that I need to make are --

4    have to be made -- have to be made on things that haven't

5    necessarily been presented yet or have been investigated.

6       Nevertheless, I'm taking at face value that the motivation

7    for this particular crime is as you've stated for burglary.

8       That doesn't necessarily mean that the nature and

9    circumstances of this particular offense are in your favor.

10   Anyone who thinks they can disrupt the power to thousands of

11   people on Christmas or Christmas Eve or in the winter is

12   taking a huge chance that that could have a deleterious

13   effect on any number of people.  It doesn't take much of an

14   imagination to understand that even if you desired to break

15   into a store for purposes of stealing cash and put thousands

16   of people at risk by doing so, that the nature and

17   circumstance of that particular offense is egregious.

18      Now, as I've said, the second is the danger to the

19   community.  Mr. Greenberg has pointed out a few things that

20   also give me pause.  You don't have a significant criminal

21   record, frankly.  His failure to operate a motor vehicle

22   without a license, which has happened a number of times, is

23   not a concern to the Court.  That doesn't mean you're not

24   going to stick around or be a danger to the community, in my

25   opinion.  That can be sufficiently supervised.

1        Nevertheless, some of the things that have happened over

2    the course of the last year tells me that this activity --

3    criminal activity is escalating in a way that is a real

4    potential danger to the community.  I would note in

5    particular the fact that you're under supervision and that

6    supervision required you to not have any weapons.  And then

7    seized at your -- at your residence at the time of the

8    offense were two guns that were not properly registered.

9        So that tells me that my ability to supervise you by

10    imposing terms and conditions may be compromised because I

11    can't trust that you're going to do the things I'm going to

12    tell you to do.

13        Also, you obviously were instructed not to engage in any

14    criminal activity.  And the evidence seems to indicate that

15    you were.  More equally important, as Mr. Greenberg noted,

16    that even after this offense, understanding the gravity of

17    what you -- or at least alleged to have committed, you were

18    on the trail of planning another offense.  That is very

19    concerning to the Court.

20        Now, you need to understand.  This is not a trial of your

21    case.  Ms. Fish is just beginning her investigation.  She's

22    going to be questioning and probing to make sure that your

23    constitutional right to be proven beyond a reasonable doubt

24    is placed on the Government.  And that is a trial yet to

25    come.

1          But, as I told you, I have to rely on the information I

2     have now to make a decision, and that information is,

3     frankly, not in your favor.  Okay?

4          Now, and the weight of the evidence, as noted by

5     Mr. Greenberg, and as I've stated, is fairly strong.

6          History and characteristics.  This gets into your drug

7     use.  Look, I don't -- I don't ever want to put somebody in

8     jail because of a drug addiction.  And I also never want to

9     put somebody in jail because of poverty.  And I think

10    Ms. Fish has accurately stated that right now those are two

11    of your largest challenges.

12         Ultimately, when I looked at Pretrial Services' report, I

13    know that they try to make every effort to make sure that

14    somebody who needs services, gets those services, regardless

15    of what they've done.

16         And so, believe me, my decision wants to do the best for

17    you in regards to dealing with those very difficult issues.

18         Unfortunately, you're not going to get drug treatment at

19    the federal detention center in pretrial condition that you

20    are in.  And I also recognize that your housing, although

21    difficult at times, is still -- you have a roof over your

22    head and you have a partner who you've lived with for some

23    time who is expecting your child.  I can imagine nothing

24    that's a stronger tie to the community than those things.

25         I wish for you that that was sufficient to overcome all

1   these other burdens that I've told you I think you're facing

2   in presenting to the Court a plan for release, but they are

3   not.

4     This program for drug treatment would be very good if not

5   for the overriding considerations of the other factors I've

6   told you about.  I cannot -- I cannot release you with the

7   belief that you can be successfully supervised at this time

8   without being a danger to the community, based on what I

9   have presented before me now.  Which means you're going to

10  need to remain in detention pending further proceedings in

11  this matter.

12    Anything further for the defendant from the Government?

13    MR. GREENBERG:  No, Your Honor.

14    THE COURT:  And from the defense?

15    MS. FISH:  Your Honor, Mr. Greenwood has submitted a

16  (inaudible).

17    THE COURT:  Yes.  Thanks for bringing that up.

18    You have a right to a preliminary hearing.  Now, no

19  indictment has been issued by a grand jury yet.  A grand

20  jury hasn't reviewed it, to my knowledge.

21    In the interim, a preliminary hearing is to determine

22  whether or not there's probable cause to believe that you've

23  committed a crime and that a crime has been committed.  By

24  waiving that hearing, you're basically saying you will wait

25  to -- for the judgment of the grand jury to determine

1        whether or not an indictment should be entered.

2            Now, I have a signed waiver here.  Did you review that

3        with Ms. Fish before you signed it?  Okay.

4            MR. GREENWOOD:  Yes, Your Honor.

5            THE COURT:  Okay.  Then based on that waiver, we will

6        strike the preliminary hearing.

7            Anything further?

8            MS. FISH:  Not right now, Your Honor.

9            THE COURT:  Thank you.  Court will be at recess.

10            THE BAILIFF:  All rise.  Court is in recess.

11                (January 6, 2023 hearing concluded)

12

13   *Angela Dutenhoffer*
     /s/ Angela Dutenhoffer, CET/ January 11th, 2023

14   AAERT Certified Electronic Transcriber

15   Reed Jackson Watkins, LLC

16   Court Approved Transcription Company

17   800 5th Avenue

18   Suite 101-183

19   Seattle, Washington 98104

20   206.624.3005

21

22

23

24

25